## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

KATHY FRAKER,

      Movant,

v.                            CASE NO. 2:08-cr-00064
                                   CASE NO. 2:09-cv-01220

UNITED STATES OF AMERICA,

      Respondent.

### <u>PROPOSED FINDINGS AND RECOMMENDATION</u>

Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 40, "Motion"). By Standing Order (# 43), this action was referred to the undersigned for submission of proposed findings and recommendation for disposition.

Movant, Kathy Fraker ("Defendant"), is serving a sentence of 60 months, upon her guilty plea to possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), to be followed by a five-year term of supervised release. (Judgment in a Criminal Case entered November 6, 2008, # 36.) She did not take a direct appeal.

The § 2255 Motion was filed with the Clerk on November 5, 2009. Accordingly, Defendant's Motion was timely filed.

<u>Facts of the Case and Procedural History</u>

The facts are set forth in the Stipulation of Facts, attached

to Defendant's plea agreement.  It states that on September 14, 2006, members of the West Virginia State Police had warrants for Tracy Brown and traveled to Defendant's residence with the hope of finding him there.  (# 30, at 7.)  When they knocked on the door, someone inside shouted, "come in."  Id.  As the State Police entered, they observed methamphetamine on scales in plain view.  Id.  Defendant entered the living room and admitted that the substance on the scales was methamphetamine.  Id.  She gave the State Police consent to search, and assisted them in locating additional methamphetamine, more scales, a "large amount" of cash, firearms, two blasting caps, plastic baggies and drug paraphernalia.  Id.  After being advised of her rights, Defendant gave a recorded statement.  Id.

The grand jury indicted Defendant on April 3, 2008 (# 1).  She made an initial appearance and was released on bond.  (## 7, 8.)  A hearing on pretrial motions was scheduled for August 4, 2008, but on that day, Defendant signed a plea agreement (# 29) and entered her guilty plea (## 26-27, 29).

Grounds for Relief and Positions of the Parties

Defendant raises the following grounds for relief:

A.  Ground one: Prosecutorial misconduct in violation of the Fourth Amendment – illegal search and seizure.  No search warrant was issued.  All attempts to secure a search warrant had failed due to lack of probable cause.  WV State Trooper O'Brien burst into my home around noon on September 14, 2006.  He did not knock, or announce his presence; nor did he state his identity or purpose.  He was not in uniform nor driving a marked police vehicle.

2

O'Brien came through my house to the bathroom where I was and pulled me by the arm to the kitchen where my cousin and niece were.  Trooper Nichols who was in uniform, was in the kitchen going through a wooden box on the counter. I asked if he had a search warrant.  He responded, "Do you know who I am?  I'm Nichols."  O'Brien added, "We don't need a search warrant.  I found residue on the mirror on the bar" between the living room and kitchen. O'Brien took me in the living room and sat me down on the sofa.  About 20-25 men, not in uniform nor displaying badges, came in and star[t]ed to turn my home inside out. O'Brien told me if I told him where everything was, they'd go easy on me.  I told him.

Once everything was seized, O'Brien conducted an audiotaped interview. As I recall, he did not advise me of my rights. He first said, "We came here this morning and you invited us in."  I said, "No."  He rewound the tape and said it again.  I shook my head indicating no. He said my nod could not be heard.  I then said, "I guess."  I was so terrorized by all these armed men and O'Brien demeanor, and I felt so threatened that I said what he wanted me to in order to stay safe.

The Fourth Amendment guarantees protection from unreasonable search and seizure.  O'Brien and Nichols both knew they lacked probably cause to search my home as no search warrant had been issued.  They ha dno cause to enter my home and no one, no[t] me, my niece or my cousin, had given permission to enter the house.  No one knocked or asked permission to enter.  O'Brien simply opened the door, and walked in.  This is exactly the conduct the Fourth Amendment intends to preclude.  Any and all evidence and statements made after the illegal entry into my home is tainted and inadmissible; yet, it was used to obtain an indictment against me more than 18 months later.

Ground two: Ineffective assistance of counsel. On August 3, 2008, my attorney called me to tell me I had a hearing I had to be at the next day.  He did not tell me the purpose of the hearing.  He did not prepare me in any way for it.  He did not tell me I had to produce witnesses or anything, just that I had to be there.  Previously, he had told my witnesses, my niece and cousin, he would call them when they were needed.  He did not call them to have them present at this hearing. On August 4, 2008, once in court, the purpose of the hearing was announced –

suppression hearing.  I was shocked as it was my hearing
and I was expected to have witnesses and my attorney had
told me nothing.  I couldn't locate my witnesses and it
was clear they would not be able to testify that day.  My
attorney told me I <u>had</u> to enter a plea.  He made no
attempt to have the hearing continued.  He had tried to
get me to plead out before and now forced it by making it
appear as if I had no other choice, despite the fact he
agreed to take this to trial if necessary when I first
retained him.

When I repeatedly told him there was no search warrant,
he said it didn't matter because once they found the
residue, I lost all my rights.  I knew this could not be
true, but he would not advocate for me, protect me from
illegal prosecution or from injustice.

If not for my attorney's below standard conduct, it is
reasonable and likely the evidence would have been
suppressed and I would not have been prosecuted.

Ground three: Ineffective assistance of counsel – did not
explain plea agreement.  My attorney directed me [to]
sign the plea agreement under threat of a 16 to 17 year
sentence if I did not.  He did not explain any of the
terms or conditions of the plea.  He did not give me a
copy to read nor did he invite any questions or
discussion of it.   I did not know the terms and
conditions of the plea or their meaning.   I did not
voluntarily enter into the plea as I believed, and still
believe, the evidence was illegally obtained and could
not be used against me.  Nonetheless, the attorney made
it appear that the prosecutor had the sole power to
determine my sentence and whatever the prosecutor wanted,
he would get.   My attorney told me to answer the
questions the judge would ask me with, "Yes sir."   I
didn't have a clue as to what I had agreed to or the
implications of answering the judge's questions
affirmatively.  I did not voluntarily and knowingly enter
into the plea agreement and have been prejudiced by my
attorney's failure to provide even a modicum of advice
and counsel as to the specific terms and conditions of
entering the plea, and the implications of the plea
hearing and acceptance of the plea by the court.

Were it not for the substandard conduct of my attorney,
I would have maintained a not guilty plea and insisted on
the suppression hearing.  I have been prejudiced by my

attorney's ineffective assistance as is evident by the
record.

Ground four: Prosecutorial misconduct – violation of
Fourth Amendment. More than 18 months after the illegal
search and seizure, I was arrested by O'Brien on a
federal indictment without a warrant.  O'Brien did not
knock or announce his presence.  He walked through my
front door, through the living room and kitchen and was
coming into the bedroom where I met him.  I asked what he
was doing. He said, "Turn around. Put your hands behind
your back.  Is there anyone in the house?"  I complied
and told him no one was in the house.  (My husband was
outside.)  As O'Brien took me from the bedroom, I asked
what was going on.  He said I had just been indicted and
he was taking me in.  He opened the top [d]rawer of a
chest in my bedroom, looking for what he didn't say.  I
said, "Oh no.  You won't find anything here.  I learned
my lesson two years ago when you were here.  There's
nothing in my house."  O'Brien never showed me the
indictment and did not have an arrest or bench warrant,
in violation of my Fourth Amendment rights.

[Ground] five: Ineffective assistance of counsel –
failure to seek dismissal of the indictment.  The
indictment, as best I know, charged one count of
distribution of methamphetamine on or about September 14,
2006.  There was no admissible evidence to support this
single count and the entire matter was stale.  So much
time had lapsed between the illegal search and seizure
and the return of the indictment with no evidence of
continuing criminal activity that the indictment should
have been dismissed.  My attorney never considered this.
Nor did my attorney file a request for bill of
particulars or a motion for preliminary hearing, each
being a fundamental and intrinsic part of criminal
defense.

But for the below standard conduct of my attorney, this
case would have been dismissed.  Instead, I am serving a
60 month sentence.

(Motion, # 40, at 4-12.)

    The United States provided transcripts of Defendant's guilty

plea and sentencing hearings (# 51, Exs. A and B) and an affidavit

5

from Defendant's retained counsel, William C. Forbes (# 51, Ex. C).
The government asserts that Defendant has failed to provide any
evidence that her counsel rendered constitutionally ineffective
assistance at the plea hearing.  Id. at 6-15.  The United States
further argues that Defendant waived her right to raise any claims
of violation of her Fourth Amendment rights.  Id. at 15-18.

Although Defendant was given an opportunity to file a reply to
the government's response, she failed to do so.

## ANALYSIS

Waiver

Defendant's plea agreement includes the following provision:

> 10. **WAIVER OF APPEAL AND COLLATERAL ATTACK.**  The
> parties retain the right to seek appellate review of the
> District Court's determination of the Sentencing
> Guideline range, if an objection is properly preserved.
> Nonetheless, Ms. Fraker knowingly and voluntarily waives
> her right to seek appellate review of any sentence of
> imprisonment or fine imposed by the District Court on ay
> other ground, so long as that sentence is below or within
> the Sentencing Guideline range determined by the District
> Court prior to any departure or variance.  Similarly, the
> United States waives its right to seek appellate review
> of any sentence of imprisonment or fine imposed by the
> District Court on any other ground, so long as that
> sentence is within or above the Sentencing Guideline
> range determined by the District Court prior to any
> departure or variance.

> Ms. Fraker also knowingly and voluntarily waives the
> right to challenge her guilty plea and her conviction
> resulting from this plea agreement, and any sentence
> imposed for the conviction, in any collateral attack,
> including but not limited to a motion brought under 28
> U.S.C. § 2255.

> The waivers noted above shall not apply to a post-
> conviction collateral attack or direct appeal based on a

6

claim of ineffective assistance of counsel.

Grounds for relief one and four allege prosecutorial misconduct (violation of the Fourth Amendment) with respect to the circumstances of the offense of conviction and Defendant's arrest.

In <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005), the Fourth Circuit held "that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." In evaluating whether a defendant's waiver was knowing and voluntary, the Fourth Circuit further held as follows:

> Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

<u>Id.</u> at 221-22.

During her guilty plea hearing, the plea agreement, including paragraph 10 containing the waiver provision, was read into the record. (# 51-1, Ex. A, at 6.) Defendant stated under oath that she understood the agreement and went over it with her attorney, "word for word, sentence for sentence." <u>Id.</u> at 7. She confirmed that Mr. Forbes answered all her questions and that she wanted Chief Judge Goodwin to accept the plea agreement. <u>Id.</u> at 7-8. The Court made specific inquiry of Defendant concerning her understanding of the waiver provision:

THE COURT: You also have given up your right to

7

> attack your conviction because of a violation of
> constitutional rights by what's called a collateral
> attack or a writ of habeas corpus.  Do you understand
> that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: The only thing you have reserved is you can
> file one to say Mr. Forbes represented you ineffectively.
> In order to carry that burden, it's very, very heavy.
> It's very, very hard to show that your lawyer acted
> ineffectively.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That's all you would have left.  Do you
> understand that?
>
> THE DEFENDANT: Yes, sir.

Id. at 18-19.  At the conclusion of the guilty plea hearing, Chief Judge Goodwin found that Defendant understood the nature of the charge, the consequences of pleading guilty to it, and the constitutional and other rights she gave up by pleading guilty. Id. at 24.  He found that her guilty plea was "entirely voluntary." Id.  Mr. Forbes's affidavit states that he reviewed the plea agreement with Defendant carefully, he discussed the merits of the motion to suppress with her, he never told Defendant to limit her answers to Judge Goodwin's questions, and that the plea agreement was significantly beneficial to her.  (# 51-1, Ex. C.)

   The undersigned proposes that the presiding District Judge **FIND** that Defendant waived her right to pursue a collateral attack on grounds one and four and that her waiver was knowing and voluntary.

Ineffective Assistance of Counsel

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.   The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  Id., at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  Id., at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id., at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  Id., at 697.  In the context of a case in which a

defendant pled guilty, she must show that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Attorney General, 956 F.2d 1290 (4th Cir. 1992).

In grounds for relief two, three and five, Defendant claims that she was denied effective assistance of counsel. Ground two claims errors with respect to preparation for the hearing on pretrial motions; ground three asserts that Mr. Forbes did not explain the plea agreement; and ground five contends that Mr. Forbes should have filed a motion to dismiss the indictment. All three of these grounds relate to matters which preceded entry of the guilty plea. Although the waiver provision of the plea agreement excludes claims of ineffective assistance of counsel, it remains true that Defendant is bound by her sworn statements at her guilty plea hearing concerning her attorney's performance. She assured Chief Judge Goodwin that Mr. Forbes had answered her questions and that she was "fully satisfied with the legal advice he's given." (# 51-1, at 3-4.)

In the face of Defendant's testimony during her Rule 11 colloquy, her allegations in her § 2255 motion are palpably incredible and patently frivolous or false. "[A[ defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be

10

able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy.   <u>United States v. Bowman</u>, 348 F.3d 408, 417 (4th Cir. 2003)." <u>Lemaster</u>, 403 F.3d at 221.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has shown no extraordinary circumstances, that the truth of her sworn statements made during the Rule 11 colloquy are conclusively established, and that Defendant's allegations in her § 2255 motion contradict the sworn statements.   The presiding District Judge should further **FIND** that Defendant was not denied effective assistance of counsel as alleged in grounds for relief two, three and five.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss Defendant's § 2255 Motion.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to

file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant and to transmit it to counsel of record.

September 16, 2010
      Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

12